**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Kelly Robinson,

    Plaintiff,

v.

Nationstar Mortgage, LLC, and
NSM Recovery Services, LLC,

    Defendants.

Case No. 2:12-cv-718

Judge Graham

Magistrate Judge Abel

OPINION AND ORDER

This matter is before the court on defendants' motion to dismiss in part (doc. 12). Defendants Nationstar Mortgage, LLC (Nationstar) and NSM Recovery Services, LLC (NSM) seek dismissal of five of plaintiff's seven counts pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. Doc. 12 at 1.

**I.    Factual Background**

Plaintiff Kelly Robinson brings this action pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. Plaintiff brings three class action counts (I, II, III) on behalf of herself and others similarly situated, and four counts solely on her own behalf (IV, V, VI, VII). Doc. 1. Defendants seek dismissal of counts I, II, III, V, and VI. Doc. 12 at 1.

This case arises from a series of five letters sent by defendants to plaintiff between June 9, 2011 and February 3, 2012. See docs. 1-1 – 1-7. These letters seek payment on a debt that plaintiff allegedly incurred through a property foreclosure. In the first letter at issue, dated June 9, 2011, defendant Nationstar wrote:

> Please be advised that Fannie Mae has completed the foreclosure on your property, and has transferred your account to Nationstar Mortgage LLC to secure payment of

1

the remaining balance. This balance, resulting from losses incurred during the foreclosure process, is an obligation for which you remain personally liable under the terms of your Note.

Our records reflect your account currently has a deficiency balance of $73,996.90.
Doc. 1-1.

On June 29, 2011, plaintiff responded that she disputed the debt and that she had "not received a copy of the foreclosure documents, nor paperwork through the mail which reflects a deficiency balance due and owing by me . . . ." Doc. 1-2. Defendant Nationstar never directly responded to plaintiff's June 29 letter, but sent another letter on August 8, 2011:

As you are aware, this claim has been turned over to our office for collection on the balance due of CKF_AMT. We want to let you know that Nationstar Mortgage LLC ("Nationstar") intends to pursue this claim and reserves the right to report this matter to the Credit Bureaus, as well as pursue all other legal remedies as allowable by state law. These remedies may include litigation and your settlement opportunities may be lost.

The process of litigation has not yet been instituted. If it happens, it will be pursued through a local attorney in accordance with applicable state statutes. Should a Judgment be issued against you as a result of this process, in some instances, you could also be charged with court costs and attorney fees. It might be valuable for you to check the laws in your state pertaining to the satisfaction of a Judgment.

We fully realize that you may contest the merits of this claim. Certainly, it is not our intent to threaten or alarm you about this matter. We would hope that you take a moment and seriously consider the consequences of your actions.
Doc. 1-3.

On August 30, 2011, plaintiff again responded that she disputed the debt, and again requested documentation of the debt's validity. Doc. 1-4. She requested that Nationstar cease contacting her until it had provided documentation of the debt and stated that "I find your letter dated August 8, 2011 to be quite threatening by suggesting that I take a moment and seriously consider the consequences of my actions by contesting this claim." Doc. 1-4. Again, Nationstar did not directly respond to plaintiff's letter, but instead sent a letter dated August 31, 2011, again seeking payment

of the debt and again invoking the possibility of litigation or other remedies. Doc. 1-5. The final debt-collection communication in the record was sent to plaintiff on February 3, 2012 from defendant NSM Recovery Services. Doc. 1-7. This letter looks different from the previous four–it appears on different letterhead and has a different format. Though it seems to seek collection on the same debt, it appears to be from a different entity. The February 3, 2012 letter states simply that "NSM RSI wishes to resolve this matter. Therefore, we are willing to offer you the following deeply discounted repayment terms." Doc. 1-7. It then offers three discounted payment plans and offers the possibility of discussing other options. Id.

Based on the five letters from Nationstar and NSM, plaintiff commenced an action in this court by filing a complaint which contains seven counts under the FDCPA. Counts I-III are asserted on behalf of plaintiff and a class of similarly situated individuals, counts IV-VII are brought by plaintiff solely on her own behalf: Count I alleges that the February 3, 2012 letter from NSM failed to include notices required by 15 U.S.C. § 1692g(a); Count II alleges that Nationstar is responsible for the February 3, 2012 communication and misrepresented itself as "NSM Recovery Services" in violation of 15 U.S.C. § 1692e(14); Count III alleges that Nationstar and NSM violated 15 U.S.C. § 1692g(a) by failing to make required disclosures following the February 3, 2012 communication (Count III appears to overlap with Count I, which brings nearly identical allegations against NSM alone); Count IV alleges that plaintiff disputed the debt and requested verification, yet Nationstar continued to attempt to collect on the debt without providing verification, in violation of 15 U.S.C. § 1692g(b); Count V alleges that Nationstar threatened to take an action that it could not legally take or that it did not intend to take, in violation of 15 U.S.C. § 1692e(5); Count VI alleges that by using "NSM Recovery Services" letterhead and signing the letter "NSM RSI," Nationstar used a name

other than its own in an attempt to collect on a debt, in violation of 15 U.S.C. § 1692e(10); Count VII alleges that after plaintiff disputed the validity of the debt and requested verification, Nationstar did not verify the debt but continued to communicate with her in an attempt to collect on the debt in violation of 15 U.S.C. 1692c(c). Doc. 1 at 15-30.

Regarding her class action counts (I-III), plaintiff "seeks to represent three alternative subclasses of individuals." Doc. 1 at 11. Each subclass consists of individuals who received a letter from Nationstar and/or NSM similar to the February 3, 2012 communication. Doc. 1 at 11-12. Plaintiff alleges that each class is so numerous as to make joinder impracticable, and that their exact numbers can be ascertained only through discovery. Doc. 1 at 12. Plaintiff asserts that her claims "and those of the members of the classes, originate from the same conduct, practice, and procedure, on the part of Nationstar Mortgage and/or NSM Recovery Services." Doc. 1 at 13. Plaintiff alleges that she has "the same interests and has suffered the same injuries as each member of the classes." Doc. 1 at 13.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly,

550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.     Analysis

Defendants seek dismissal of Counts I, II, III, V, and VI pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted.

<u>Count I</u>

15 U.S.C. § 1692g(a) requires that a debt collector make a series of disclosures to a debtor "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt . . . unless the . . . information is contained in the initial communication or the consumer has paid the debt . . . ." Plaintiff's first count alleges that the February 3, 2012 communication was the "initial communication" from defendant NSM, and that NSM was required to make the 15 U.S.C. § 1692g(a) disclosures. Defendants argue that Count I must be dismissed because the February 3, 2012 letter is not the "initial communication" for purposes of Section 1692g(a) and so did not trigger disclosure requirements. Plaintiff's allegations are clear. The February 2, 2012 letter was the first she received from NSM, but was not the first communication she received relating to collection of the debt. The viability of Count I depends on whether the first communication from a subsequent debt collector, where a previous debt collector has sent other communications, constitutes an "initial communication" for purposes of the FDCPA.

Each party has proffered a handful of non-binding cases that they argue support their preferred position. There appear to be no binding decisions to guide the Court in determining whether a first communication from a subsequent debt collector triggers the FDCPA's disclosure

6

requirements. A handful of cases interpret the statute to impose the disclosure only once, on a single debt collector making its initial communication, not on the first communications made by subsequent debt collectors. For example, after noting that federal courts had interpreted Section 1692g(a) in opposing ways, the District of Maryland interpreted the words "the initial communication" to refer to only one communication: "[H]ad Congress intended that there might be more than one initial communication with a debtor on a given debt, it certainly could have provided that, such as by explicitly requiring both *initial* and *successive* debt collectors to provide the § 1692g(a) validation notice." Senftle v. Landau, 390 F.Supp.2d 463, 473 (D. Md. 2005); see also Nichols v. Byrd, 435 F.Supp.2d 1101, 1107 (D. Nev. 2006) (adopting the Senftle court's logic). Similarly, in an unpublished opinion, the Third Circuit Court of Appeals held with little explanation that the disclosure requirement could only be triggered by a single "initial communication" and that if one debt collector made the disclosures, subsequent debt collectors were not obligated to do so. Oppong v. First Union Mortg. Corp., 326 Fed. Appx. 663, 666 (3d. Cir. 2009).

Other federal courts have come to the opposite conclusion, holding that the statute is ambiguous and that the purpose of the FDCPA requires an interpretation that provides consumers with more disclosures, not fewer, in order to prevent the possibility of facing collection for an invalid debt. For example, in Stair v. Thomas & Cook, the District of New Jersey found that "[w]hether the 'initial communication' in section 1692g(a) refers to each debt collector's initial communication with the consumer or only the first debt collector's initial communication is not answered by the text of section 1692g(a) alone, as either interpretation is plausible under the language of section 1692g(a)." 254 F.R.D. 191, 196 (D. N.J. 2008). The court interpreted the language of the statute in accordance with its purpose, "to eliminate abusive debt collection practices which contribute to

the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id. at 195 (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d. Cir. 2000)). This statutory purpose "makes apparent that section 1692g's notice requirements apply equally to the initial communications of first and subsequent debt collectors. . . . [T]he FDCPA's purpose . . . would be undermined if subsequent debt collectors were excused from complying with the [disclosure] requirements . . . ." Stair, 254 F.R.D. at 196. The Court was particularly concerned that debt collectors could evade the requirements of Section 1692g by making an initial communication with the required disclosures, then passing the debt off to a subsequent collector before the end of the period in which the consumer could dispute the validity of the debt or request verification, as allowed by the statute. Id. Similarly, in Turner v. Shenandoah Legal Group, P.C., the Eastern District of Virginia found that "[t]he language [of the statute] does not specify whether each subsequent debt collector on each separate debt must provide a validation notice." No. 3:06CV045, 2006 WL 1685698 at *10 (E.D. Va. June 12, 2006). The Turner Court found that the "overall purpose of the FDCPA is for the protection of consumers as well as the protection of debt collectors that utilize fair methods" and reasoned that "such purposes can be best promoted by the interpretation of 'initial communication' as [including subsequent debt collectors.]" Id. at *11.

Given that the statutory text may reasonably be interpreted to require or not to require 1692g disclosures from subsequent debt collectors, and in the absence of any controlling precedent, the more persuasive interpretation is that section 1692g(a) requires the initial communication from each debt collector–not just the first debt collector–to comply with the disclosure requirements. The requirements that debt collectors validate the debt and give the debtor the opportunity to dispute the debt aim to "eliminate the recurring problem of debt collectors dunning the wrong person or

8

attempting to collect debts which the consumer has already paid." S. Rep. 95-382, 1977 WL 16047 at *4 (Aug 2, 1977). To decline to require subsequent debt collectors to validate the debt on which they seek recovery would undercut this goal. It is implausible to think that Congress, concerned with "dunning the wrong person," would limit disclosure requirements to a narrow range of debt collectors–those that are the first to seek recovery on a given debt. Instead, an interpretation that requires *all* debt collectors to comply with the validation and disclosure requirements best promotes the goal of protecting consumers.

Count II

Plaintiff's second claim alleges that Nationstar is responsible for the February 3, 2012 letter, and in that letter misrepresented itself in violation of 15 U.S.C. § 1692e(14) by using NSM letterhead and signing the letter "NSM RSI." Doc. 1 at 17. Defendants counter that "Count II fails on its face because the Complaint does not plead that anything written in the February 3, 2012, letter is false, deceptive or misleading." Doc. 12 at 12. This is not correct. The complaint does allege that the letterhead and signature are misleading because Nationstar mailed the letter to plaintiff, and the letter makes it seem as though some other entity did. Doc. 1 ¶ 56. Defendants' alternatively argue that "Count II should be dismissed because the February 3, 2012, letter is not Nationstar's letter." It may not be, but plaintiff has alleged that it is. See doc. 1 ¶ 56. At this stage of the proceedings, plaintiff's factual allegations are accepted as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Count III

Plaintiff's third count alleges the same violation of 15 U.S.C. § 1692g(a) as Count I, except she brings Count III against both Nationstar and NSM; Count 1 is against only NSM. Defendants

argue that Count III must be dismissed for the same reasons as Count I.

Defendant also argues that Count III should be dismissed "at least as to Nationstar, because the Complaint does not plead facts to show how NSM and Nationstar purportedly acted as a "unified entity." Doc. 12 at 13. Plaintiff's allegations are clear that "Nationstar Mortgage and NSM Recovery Services mailed Ms. Robinson the February 3, 2012 correspondence." Doc. 1 ¶ 61. Plaintiff alleges that Nationstar and NSM are two facets of the same entity: "By using 'NSM Recovery Services' letterhead and signing the correspondence, 'NSM RSI,' Nationstar Mortgage and NSM Recovery Services was attempting to use their respective corporate identities to shield themselves from the reach of the FDCPA." Doc. 1 ¶ 62. It is unclear whether plaintiff alleges that Nationstar and NSM are a single or two different entities. But either way, Count III fails with regard to Nationstar. If they are separate entities, the February 3, 2012 correspondence is clearly from NSM, not Nationstar. If they are the same entity, then the February 3, 2012 correspondence is not the "initial correspondence" and the 15 U.S.C. § 1692g(a) requirements are not triggered. Either way, the February 3 letter does not support the inclusion of Nationstar in Count III. Absent Nationstar, Counts I and III allege the same misconduct by NSM.

<u>Class Action Allegations (Counts I-III)</u>

Defendants argue that the class relief sought in Counts I through III should be dismissed because the facts alleged in the complaint do not support the requirements of a class action. Federal Rule of Civil Procedure 23(a) provides that one member may sue on behalf of a class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

the interests of the class." Additionally, a class action must fall into one of the three requirements of Rule 23(b) which describes three situations in which a class action is proper.

Without stating which elements of rule 23(a) and (b) are not satisfied by plaintiff's complaint, defendants argue generally that the complaint has inadequate factual allegations. However, plaintiff does include a number of factual allegations relevant to her class action claims. Regarding the 23(a) factors: Plaintiff alleges that the class includes numerous individuals who received similar communications from Nationstar or NSM. Doc. 1 at 11-12. Though she alleges that she can not identify the exact number of people to receive such a letter, her allegation that they are numerous and that joinder is impracticable is plausible, and must be accepted as true. Second, the class counts involve claims and issues that are common to members of the alleged class. If, as plaintiff alleges, defendants have violated the FDCPA using similar letters sent to many individuals, litigation involving those individuals will involve common issues of fact and law. Doc. 1 at 12-13. Plaintiff also alleges specific facts that would demonstrate that hers are typical of the claims and defenses of the class: "[Plaintiff's] claims, and those of the members of the classes, originate from the same conduct, practice, and procedure, on the part of Nationstar Mortgage and/or NSM Recovery Services." Doc. 1 at 13. Finally, plaintiff states that she is "willing and prepared to serve this Court and proposed classes" and that her "interests are co-extensive with and not antagonistic to those of the absent members of the class." Doc. 1 at 13.

Similarly, plaintiff argues that Rule 23(b)(3) is satisfied. Under that rule, a class action may proceed if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiff alleges facts that, under the standard

applicable to a motion to dismiss, are sufficient to state a claim for class relief under Rule 23(b)(3). Plaintiff alleges that "common questions of law and fact predominate over questions that may affect individual member of the classes. Such issues include, but are not limited to: (a) the existence of Nationstar Mortgage's identical conduct particular to the matters at issue; (b) the existence of NSM Recovery Services' identical conduct particular to the matters at issue; (c) Nationstar Mortgage's violations of 15 U.S.C. § 1692 *et seq.*; (e) the availability of statutory penalties; and (f) attorney's fees and costs." Doc. 13 ¶ 35. These allegations, taken in a light most favorable to plaintiff, are sufficient to state a claim for class relief.

Count V

In Count V, plaintiff alleges that defendant Nationstar threatened to take actions that it could not legally take or that it did not intend to take, in violation of 15 U.S.C. § 1692e(5). Defendants argue that Count V should be dismissed because the complaint does not identify the action that Nationstar threatened to take and could not or did not intend to take. "Although the Complaint refers to letters sent by Nationstar, it does not state what in the letter is the supposedly offending threat of action." Doc. 12 at 15. The complaint includes three identical block quotes from three Nationstar communications–it is clear that plaintiff asserts that the unlawful threat is in the quoted language. The three letters state:

> We want to let you know that Nationstar Mortgage LLC ("Nationstar") intends to pursue this claim and reserves the right to report this matter to the Credit Bureaus, as well as pursue all other legal remedies as allowable by state law. These remedies may include litigation and your settlement opportunities may be lost.
>
> The process of litigation has not yet been instituted. If it happens, it will be pursued through a local attorney in accordance with applicable state statutes. Should a Judgment be issued against you as a result of this process, in some instances, you could also be charged with court costs and attorney fees. It might be valuable for you to check the laws in your state pertaining to the satisfaction of judgment.

Doc. 1 at 23-25.

This language contains six references to future action that could be construed as a threat: 1) Nationstar intends to pursue the claim; 2) Nationstar reserves the right to report to credit bureaus; 3) Nationstar reserves the right to pursue all other legal remedies under state law; 4) Nationstar may pursue litigation; 5) Plaintiff may lose settlement opportunities; and 6) Plaintiff may be charged with court costs if Nationstar prevails in litigation. Plaintiff does not indicate which of those items she alleges to be a threat in violation of 15 U.S.C. § 1692e(5). Nor does she allege, much less present a plausible reason that Nationstar could not legally take any of the six threatened actions. Plaintiff only generally asserts that Nationstar threatened to take an action that it could not legally take or that it did not intend to take. Doc. 1 ¶ 85. Plaintiff has alleged no facts to make it facially plausible that Nationstar could not and/or did not intend to take any of those six actions. Count V fails to "permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

Count VI

Like Count II, Count VI focuses on Nationstar's alleged misrepresentation by using the NSM Recovery Services and NSM RSI names. Plaintiff alleges that Nationstar sent the February 3, 2012 letter, and deceptively used these alternate names in order to attempt to collect on the debt in violation of 15 U.S.C. § 1692e(10). Doc. 1 at 26-27. Defendants argue that Count VI should be dismissed because "the Complaint does not plead that anything written in the February 3, 2012, letter is false, deceptive or misleading. A least sophisticated consumer in Ms. Robinson's position employing a basic level of understanding and willingness to read with care would simply conclude from the NSM letter, which references the amount and the same loan number that was the subject of Nationstar's prior letters, that another company (NSM) was trying to collect that deficiency

13

judgment." Doc. 12 at 16. But plaintiff alleges that that reasonable conclusion would be incorrect, because Nationstar, not some another company, sent the February 3, 2012 letter. See, e.g., doc. 1 ¶ 93 ("On February 3, 2012, Nationstar Mortgage, using a name other than its own–NSM Recovery Services–mailed Ms. Robinson written correspondence in connection with its efforts to collect from Ms. Robinson the alleged debt obtained in default."). This allegation, accepted as true for purposes of this order, is sufficient to state a claim for a violation of 15 U.S.C. § 1692e(10).

## V.     Conclusion

Based on the foregoing reasons, the defendant's motion to dismiss (doc. 12) is GRANTED with respect to Count V and Count III against Nationstar; it is DENIED with respect to Counts I, II, and VI, and Count III against NSM.

IT IS SO ORDERED.

S/ James L Graham  
James L. Graham  
UNITED STATES DISTRICT JUDGE

Date: November 15, 2012